UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO VAUGHN,

       Plaintiff,

v.                                                                                    Case No. 10-14019
                                                    Honorable Patrick J. Duggan

COUNTY OF WASHTENAW,

       Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S (1) MOTION FOR LEAVE TO AMEND ITS ANSWER TO ADD THE AFFIRMATIVE DEFENSE OF JUDICIAL ESTOPPEL AND (2) MOTION FOR SUMMARY JUDGMENT BASED ON JUDICIAL ESTOPPEL

On October 7, 2010, Plaintiff Antonio Vaughn ("Plaintiff") filed this lawsuit against his employer, Defendant County of Washtenaw ("County"), claiming that the County violated state and federal law when it removed Plaintiff from the work schedule from July 2009 through late March 2010, due to erroneous medical documentation. The County filed an Answer to Plaintiff's Complaint on November 12, 2010. Presently before the Court is the County's motion to amend its Answer to add judicial estoppel as an affirmative defense, filed pursuant to Federal Rule of Civil Procedure 15(a)(2) on March 14, 2011. Also before the Court is the County's motion for summary judgment based on judicial estoppel, filed pursuant to Federal Rule of Civil Procedure 56 on the same date. Both motions have been fully briefed and, on May 24, 2011, this Court held a motions' hearing. For the reasons that follow, the Court grants the County's motion to amend its answer to add the affirmative defense of judicial estoppel and grants the County's motion

for summary judgment based on that affirmative defense.

I.      **Factual and Procedural Background**

Plaintiff has been employed as a corrections officer with the County since March 2004. He has a history of chronic low back pain, originating in approximately 2000. On or about May 21, 2009, the County sought medical documentation concerning Plaintiff's condition.

On July 9, 2009, Plaintiff's physician submitted a form to the County indicating that medical leave was not required for Plaintiff's condition. The physician, however, mistakenly checked a box on the form indicating that Plaintiff was "'unable to perform any one or more of the essential functions of the employee's job.'" (*See* Compl. ¶ 12.) Relying on this statement, on July 21, 2009, the County informed Plaintiff at a meeting that it "was 'moving to separate him from the sheriff's department' and that they [sic] would 'not create a position for him.'" (*Id*. ¶ 13.) Two days later, however, Plaintiff received a letter from the County stating that "he would be 'placed on medical leave effective July 20, 2009' and that leave was 'under the FMLA' through November 13, 2009, his return to work date, at which time he would be reinstated if he submitted 'an updated medical statement either releasing [him] to return to work with or without restrictions' by October 30, 2009." (*Id*. ¶ 14.)

Plaintiff's physician thereafter corrected the error on the County's medical form, clarifying that Plaintiff was able to perform the essential functions of his job. (*Id*. ¶ 15.) The physician included a letter reaffirming that Plaintiff did not require medical leave for

2

his current condition and that he could perform all of the required duties of his position. (*Id.*) Plaintiff provided the County with this documentation on or about August 26, 2009. (*Id.* ¶ 16.) The County did not accept this documentation and continued to refuse to return Plaintiff to the work schedule.

In the meantime, on or about August 12, 2009, Plaintiff obtained legal counsel (his current attorney) to advocate on his behalf with the County. (*Id.* ¶ 23.) On August 26, 2009, Plaintiff's counsel sent a letter to the County demanding Plaintiff's "immediate[] reinstate[ment]" to his position based on the physician's corrected information. (Pl.'s Resp. Ex. E.) Plaintiff was not reinstated.

Therefore, on October 12, 2009, Plaintiff's counsel contacted the County and indicated that, if the County did not reinstate Plaintiff immediately, counsel would assist Plaintiff "in asserting his legal rights to the full extent of the law, including but not limited to injunctive relief, damages, attorney fees, and other relief." (Pl.'s Resp. Ex. H.) Two days later, Plaintiff claims that he received an express delivery from the County asking him to return to work on October 15. (*Id.* Ex. A ¶ 12.) When Plaintiff reported to work on that date, however, he learned that a dispute about his restrictions remained and he would not be allowed to return. (*Id.*)

On or about October 19, 2009, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (Compl. ¶ 24; Def.'s Mot. Summ. J. Ex. 5.) On March 12, 2010, the parties met with counsel in an unsuccessful attempt to resolve this matter. (Compl. ¶ 26.) On March 19, 2010, the County directed Plaintiff to

3

report to work on March 22, 2010. (*Id.* ¶ 27.) Since that date, Plaintiff has been working in his previous position.

The EEOC issued Plaintiff a right to sue letter on July 7, 2010. (*Id.* ¶ 28.) He thereafter filed this action on October 7, 2010, alleging the following counts against the County: (I) retaliation in violation of the Family Medical Leave Act; (II) violation of the Americans with Disabilities Act ("ADA"); (III) violation of Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"); (IV) retaliation in violation of the ADA; (V) retaliation in violation of the PWDCRA; (VI) failure to accommodate in violation of the ADA; and (VII) failure to accommodate in violation of the PWDCRA.

On March 3, 2011, during discovery in this matter, the County learned for the first time that Plaintiff and his wife had filed for bankruptcy, which was discharged on December 21, 2009. Specifically, in response to the County's interrogatory asking Plaintiff to "itemize all damages you claim to have suffered as a result of the allegations in your Complaint," Plaintiff stated that "he had to file for bankruptcy, which was completed on December 21, 2009." (Def.'s Mot. to Amend Ex. 3.) According to Plaintiff, he and his wife consulted with a bankruptcy attorney on June 17, 2009.[1] (Pl.'s

---

[1] In his affidavit submitted in support of his response brief, Plaintiff states that he and his wife consulted with a bankruptcy attorney "because of other financial issues unrelated to [his] job." (Pl.'s Resp. Ex. A ¶ 5.) However, when asked to "itemize all damages you claim to have suffered as a result of the allegations in your Complaint," Plaintiff answered that "he had to file for bankruptcy." (Def.'s Mot. Summ. J. Ex. 9 at 2.) To the extent the reason for Plaintiff's and his wife's consultation with a bankruptcy attorney is relevant, the statements in his affidavit cannot be used to contradict his earlier answer. *See Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

Resp. Ex. A.) Through further investigation, the County discovered that Plaintiff in fact had filed a bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Michigan on September 3, 2009.

The County further discovered that Plaintiff failed to disclose to the bankruptcy court his current claims against the County. For example, Plaintiff did not disclose any of his employment claims against the County in his Schedule B requiring the debtor to "list all personal property of the debtor of whatever kind." (Def.'s Mot. Summ. J. Ex. 4.) With respect to "[o]ther contingent and unliquidated claims of every nature . . .," Plaintiff responded "none" on Schedule B. (*Id*. at 6.) In the Statement of Financial Affairs filed in the bankruptcy proceedings, Plaintiff was asked to list "[a]ll suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." (*Id*. at 27.) Although he listed another lawsuit, Plaintiff did not list anything related to his claims against the County and never amended this statement even after filing his EEOC charge. (*Id*. at 27; Ex. 3.)

On March 14, 2011, the County filed its motion to amend its Answer to assert judicial estoppel as an affirmative defense. The County argues that the doctrine of judicial estoppel precludes Plaintiff from pursuing his claims against the County because he failed to disclose those claims in the bankruptcy proceedings. The County therefore, on the same date, also filed its motion for summary judgment based on judicial estoppel.

**II.     The County's Motion to Amend its Answer**

    **A.     Applicable Standard**

The County's motion to amend its Answer is governed by Federal Rule of Civil Procedure 15(a). Rule 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Nevertheless, the Sixth Circuit Court of Appeals has identified several factors that may support the denial of a motion to amend: "'Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment . . .'" *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001) (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989) (additional citations omitted)).

### B. Analysis

The County provides a reasoned explanation for its failure to initially assert the affirmative defense of judicial estoppel in its Answer to Plaintiff's Complaint. In response, Plaintiff fails to identify any factor to support the denial of the County's request. The Court therefore is granting the County's motion to amend its Answer.[2]

## III. The County's Motion for Summary Judgment

### A. Standard for Summary Judgment

Summary judgment is appropriate pursuant to Federal Rule of Civil Procedure 56 if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

---

[2]The County filed its amended answer on May 25, 2011.

judgment as a matter of law." Fed R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact."  *Id.* at 323, 106 S. Ct. at 2553.  Once the movant meets this burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.  The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

    **B.**    **Applicable Law and Analysis**

The doctrine of judicial estoppel is an equitable doctrine "utilized in order to preserve the integrity of the courts by preventing a party from abusing the judicial process

through cynical gamesmanship." *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (2010). Judicial estoppel bars a litigant from (1) "asserting a position that is contrary to one the party has asserted under oath in a prior proceeding," if, (2) "the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir 1990)).

Pursuant to the Bankruptcy Code, a debtor seeking bankruptcy protection is required to file a schedule of assets, liabilities, current income, current expenditures, and a statement of the debtor's financial affairs. 11 U.S.C. § 521(1). "It is well-settled that a cause of action is an asset that must be scheduled under § 521(1)." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005). It also is well-established that "'the duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action.'" *Id*. (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) (additional citations omitted)); *see also White*, 617 F.3d at 479 n.5 (also citing the duty to amend stated in *In re Coastal Plains*). A bankruptcy court necessarily adopts the debtor's disclosures when it confirms the bankruptcy plan. *See Lewis*, 141 F. App'x at 425. Thus where a debtor has failed to disclose a claim in bankruptcy proceedings, the Sixth Circuit has held that the doctrine of judicial estoppel generally bars the debtor from subsequently pursuing the claim. *Id*. at 425; *see also White*, 617 F.3d 472.

The doctrine of judicial estoppel is not applied, however, where the debtor's

8

omission resulted from "mistake or inadvertence." *Lewis*, 141 F. App'x at 425 (citing *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002); *White*, 617 F.3d at 476. In *Browning*, the Sixth Circuit identified two circumstances in which a debtor's failure to disclose a claim might be deemed inadvertent: (1) "where the debtor lacks knowledge of the factual basis of the undisclosed claims," and (2) where "the debtor has no motive for concealment." 283 F.3d at 776. In *Eubanks*, the court added the "absence of bad faith," which the court found based on the plaintiffs' numerous attempts to advise the bankruptcy court and the trustee of the claim that was omitted on their schedules. 385 F.3d at 895, 898-99.

The Sixth Circuit has refused to find mistake, inadvertence, or the absence of bad faith based on the decision of the debtor's attorney to not disclose a claim to which the debtor alerts the attorney, regardless of whether the attorney's decision was made unintentionally. *Lewis*, 141 F. App'x at 427 (finding "unpersuasive" the plaintiff's assertion that she relied in good faith on the advice of her attorney's paralegal to omit her claim); *White*, 617 F.3d at 483 (finding the plaintiff's argument that she discussed her harassment claim with her attorney but the attorney failed to include it in her bankruptcy filings "unpersuasive.") In both *Lewis* and *White*, the court found no reason to deviate "from the general rule . . . that litigants are bound by the actions of their attorneys," as set forth by the Supreme Court in *Link v. Wabash R.R. Co.*, 370 U.S. 626, 82 S. Ct. 1386 (1962). *See Lewis*, 141 F. App'x at 427-28; *White*, 617 F.3d at 483-84. As the court reasoned in *White*: "[T]he mistake does not lie solely with White's attorney. In addition

to choosing her attorney, White signed the bankruptcy petition that omitted the filing. By signing, she swore, under penalty of perjury, that the filing was accurate." 617 F.3d at 484.

In the present matter, Plaintiff failed to disclose his employment claims against the County in his bankruptcy filings. (Def.'s Mot. Summ J. Ex 4.) He signed those filings "under penalty of perjury." (*Id*. at 34.) Plaintiff argues in response to the County's motion that when he signed his bankruptcy petition, schedules, and statements on September 17, 2009, his statements were not false because he still was employed by the County. (Pl.'s Resp. Ex. A ¶¶ 9, 10.) According to Plaintiff, while he retained current counsel on August 12, 2009, thereafter they were only "dealing with the medical documentation issue" and "working . . . to obtain reinstatement to [his] job." (*Id*. ¶¶ 6, 7.) Plaintiff contends that "[a]t that time . . . [he] did not have any financial claims against the County." (*Id*. ¶ 6.)

In his verified complaint, however, Plaintiff alleges that the County met with him on July 21, 2009, at which time "he was told that the [C]ounty was 'moving to separate him from the sheriff's department' and that they would 'not create position for him.'" (Compl. ¶ 13.) Plaintiff further alleges that he has "had legal counsel advocating on his behalf to the County . . . since on or about August 12, 2009, asserting [P]laintiff's rights under the FMLA and otherwise under law, seeking [his] reinstatement to his position." (*Id.* ¶ 23.) On August 26, Plaintiff's counsel contacted the County and demanded his immediate reinstatement, but the County refused to comply.

Thus there is no genuine issue of material fact that when Plaintiff filed for bankruptcy on September 3, 2009, he was aware of his contingent claim(s) against the County. Moreover, on October 19, 2009, Plaintiff filed his EEOC charge against the County alleging discrimination in violation of the ADA and requesting a right to sue letter. If there is any doubt about his belief that he had a contingent claim against the County before October 19, 2009, there certainly can be no dispute that he had one by then. Despite the fact that a debtor's duty of disclosure is a continuing one, Plaintiff did not then amend his bankruptcy filings to disclose this claim.

Plaintiff relies on his bankruptcy attorney's advice in an attempt to show that his failure to disclose his claims was inadvertent and/or lacking bad faith. According to Plaintiff, he confirmed with that attorney, Sandra Hazlett, that he did not need to disclose his EEOC charge or any potential lawsuit during their meeting with the bankruptcy trustee. (Pl.'s Resp. Ex. A ¶ 15.) He submits an affidavit from Attorney Hazlett who states that, based on her experience, Plaintiff did not need to include his administrative charge or claims against the County in his bankruptcy filings. (Pl.'s Resp. Ex. J.) Attorney Hazlett avers:

> [Plaintiff] did not include a claim against the County on his bankruptcy statement on that date (September 17, 2009) because he had neither filed a lawsuit nor an administrative proceeding against the County by that date. The unemployment claim had been disclosed and there was no dispute to be administratively decided at that time.

(*Id.* ¶ 10.) She further claims that, based on her experience with bankruptcy cases and the trustee assigned to Plaintiff's case in particular, there is no reason to amend a bankruptcy

11

filing to include contingent or unliquidated claims unless and until a claim actually is liquidated. (*Id*. ¶¶ 12-17.)

Attorney Hazlett's affidavit, however, contradicts the well-established Sixth Circuit precedent discussed earlier. First, that a debtor is obligated to list contingent claims. Second, that a debtor has a continuing obligation to amend his or her filings if necessary to include such claims. Even assuming that Plaintiff lacked a financial claim against the County when he filed for bankruptcy (an assumption this Court does not accept), he still did not amend his bankruptcy filings after he filed a discrimination charge with the EEOC. Finally, as Sixth Circuit precedent also establishes, a litigant cannot rely on his or her attorney's advice or decisions to demonstrate mistake, inadvertence, or a lack of bad faith.

Moreover, pursuant to applicable principles of bankruptcy law, Plaintiff is not the party entitled to enforce the right asserted in his Complaint. When an individual files for bankruptcy, all of his legal and equitable interests in property become part of his estate and are surrendered to the trustee appointed to administer it. 11 U.S.C. §§ 541(a)(1), 521(a)(4). The trustee, rather than the debtor, has the capacity to sue and be sued and is the real party in interest in whose name this action must be prosecuted. *See* 11 U.S.C. § 323(b); Fed. R. Civ. P. 17(a); *In re Bard*, 49 F. App'x 528, 529 (6th Cir. 2002).

## IV. Conclusion

Plaintiff was aware of facts supporting his claim(s) against the County when he filed for bankruptcy. By that time, Plaintiff had consulted counsel to pursue his legal

rights and obtain relief from what he clearly believed was unlawful treatment by the County. In fact, a month and a half after filing for bankruptcy, he filed an EEOC charge against the County alleging discrimination. Nevertheless, Plaintiff omitted his contingent claims against the County from his initial bankruptcy disclosures and never took any steps to amend his disclosures to reveal his claims. Thus there is no basis to compare Plaintiff's conduct with that of the plaintiffs in *Eubanks*, where the Sixth Circuit concluded that the plaintiffs' numerous efforts to inform the bankruptcy court and trustee of their claims demonstrated an absence of bad faith and therefore the inapplicability of the judicial estoppel doctrine. Plaintiff's case, instead, is indistinguishable from *Lewis* and *White*. The Court therefore concludes that the doctrine of judicial estoppel bars him from pursuing those claims now.

Accordingly,

**IT IS ORDERED**, that Defendant County of Washtenaw's Motion for Leave to Amend its Answer to Add the Affirmative Defense of Judicial Estoppel is **GRANTED**;

**IT IS FURTHER ORDERED**, that Defendant County of Washtenaw's Motion for Summary Judgment Based on Judicial Estoppel is **GRANTED**.

Dated: June 8, 2011                     s/PATRICK J. DUGGAN
                                                UNITED STATES DISTRICT JUDGE

Copies to:
Nicholas Roumel, Esq.
Thomas R. Wurst, Esq.
Keith E. Eastland, Esq.